Report of Committee. — Award Seat to William Williams.
Assembly Chamber, March 3th, 1866.
Mr. Pitts, from the committee on privileges and elections, to which was referred the 'petition of James S. Lyon, for the seat now held in this House by-Hon. William Williams, made the following report:
Report of Messrs. Pitts and Leving-er, from the Committee on Privileges and Elections, relative to the Seat now occupied by Wm. Williams, of Erie County.
Committee on privileges and elections, to which was referred the memorial of James S. Lyon, Esq., claiming that he was duly elected member of Assembly from the first Assembly district of the county of Erie at the last general election, and entitled to the seat in this body held by the Hon. William Williams, respectfully report: .
That the committee made an order that each of the parties herein should prepare and serve upon the opposite party a statement of his case, and the votes and facts upon which he relied in •this proceeding, which statements will be found at pages Í34 to 139 of the evidence. S¡he committee proceeded with all reasonable dispatch to hear the evidence in this proceeding, but have been unable to report, at an earlier day, by reason of being engaged in the hearing of another contested case.
In this case the inquiry requires the consideration of ballots cast or offered by legal voters, but not counted or allowed, or erroneously allowed by the canvassers.
Of ballots illegally cast, for the reason that the voter casting them had not at the time the legal right to vote, and which were improperly allowed; and
*370 Of alleged .irregularities upon the part of the inspectors holding the poll at the time of the election.
It was conceded by the parties hereto that the majority for the sitting member, as returned by the board of county canvassers, is ten (see page two of the evidence), and it also appears by the returns from, the several election districts, that the vote in this Assembly district was 3_142 for William Williams and 3,132 for James S. Lyon.
There was one ballot cast in the first district of the fourth ward, which was not allowed, which by mistake was deposited in the ward box, and which was a ballot for the sitting member. The whole number of votes cast in that district for member , of Assembly was three hundred and seven, and the number of ballots found in the Assembly box was three hundred' and six; besides the inspector, James Gilbert, testified that he put an Assembly ticket into the ward box through mistake, and gave notice of the same at the time. (See testimony of James Gilbert, page 104.) There is no conflict of evidence as to this vote, or as to the fact that it was not allowed, and the sitting member is clearly entitled to the same. (See Laws of 1842.)
There is another Assembly ballot proved to have been found, which was for the sitting'member, in the State box in the same district, but it cannot be allowed for the reason that by counting it, it would cause an excess of one Assembly ballot, and the law abovo cited is, that whenever a ballot .is found in the wrong box, if by counting it with those in the proper box it does not produce an excess, it is to be allowed, and it must not be allowed if it does produce an excess of votes over the whole number cast.
There were three Assembly ballots cast for James S. Lyon for member of Assembly, in the third election district of the second ward, by George A. Mills, A. Norris and Thomas S. Deever, which ballots were improperly received and allowed for the reason that the said voters were not registered. (See evidence, pages 77, 78, 79-131 and 132.) The evidence is uncontradicted that these three men voted for the contestant, and it is conceded that they were not registered. The contestant claims that these men were legal voters, and their votes should be allowed because they voted at the last general election preceding the election of last year in said district, and their names are on the poll list of the preceding year ; that it was the duty of the board of registry to have placed their names on the registry, *371 and that they should not be deprived of their right to vote on account of the fault, neglect or mistake of the registry board.
The law under which the last general election was held was passed at the last session of the Legislature (see Session Laws of 1865, chapter 740), and this is the first time that any committee or tribunal has been called upon to pass upon any of its provisions. We do not consider the position taken by the contestant as tenable. The Assembly district in question is a portion of the city of Buffalo, an incorporated city of this State (see evidence, page two), and by the provisions of the act above referred to, in all such districts no person shall be allowed to vote unless his name is on the register prepared in accordance with the said statute by the proper «board. The provision of the statute which applies to these three voters is as follows : “ It shall be the duty of the said inspectors carefully to preserve the said list for their use on election day, and to designate one of their number, or one of the clerks, at the opening of the polls, to check the name of every voter voting in such district whose name is on the register; and no vote shall be received at any annual election in this State, unless the name of the person offering to vote be on the said registry made and completed, as hereinbefore provided, preceding the election ; and any person whose name is on the registry may be challenged, and the same oaths shall be put as are now prescribed by law. This, section shall be taken and held, by every judicial or other tribunal, as mandatory and not as directory. And any vote which shall be received by the said inspectors- of election in contravention of this section shall be void, and shall be rejected from the count in any legislative or judicial scrutiny into any result of the election.”
Last part, section six, of law above cited. This law is imperative, and it is necessary that every voter should be registered, and that in accordance with its provisions. It specially declares that the above provision shall be mandatory, and that all ballots received from voters not- registered shall be deducted in any scrutiny in the result of the election. To allow these votes would be an entire disregard of the statute, and one which would be so gross as to excite just and severe criticism. This law at the last election, in the judgment of the undersigned, prevented thousands of illegal and fraudulent ballots from going into the ballot-boxes, and from influencing the result. Any statute which preserves the purity of the election, and prevents fraud and illegal voting, is a public blessing, and should be strictly adhered *372 to by all good citizens, without respect of party. The ballot-box is the very foundation of our institutions, and the bulwark of our civil liberty, which should be protected by every proper safeguard.
No question was made by either of the learned counsel as to the constitutionality of the law of last winter, and we do not feel called upon to elaborate uj>on this question. We have no doubt as to its constitutionality, and that the Legislature have not only the power but it is their duty to so regulate the manner of voting as to secure to the people of this State this great right, and to prevent elections from being carried b,y either or any party by means of fraudulent and illegal ballots. These three votes must be deducted from those allowed to the contestant.
The contestant claims that the ballot cast by John W. Clark, in the first district of the fifth ward, for the sitting member, should be rejected on the ground that he was a non-resident of the district. It appears from the evidence that this voter lives in said district and ward and keeps a grocery in the eighth ward; that he moves his family and a portion of his furniture to the store during cold weather, hut with no intention of making that his home; that in this instance he had taken a part of his furniture to his store, and liad taken his wife there, but simply to stay during the winter, and that he now has furniture in his house and considers that as his home, and intends to return in the spring. (See evidence of John W. Clark, pages 129-and 130.) The facts as to this vote are undisputed, and appear in the evidence as above stated.
A person never loses one residence until he acquires another, and a person leaving a fixed place of abode temporarily or for a particular purpose, either for business, pleasure or health, with the intent of returning to such place as soon as such purpose is accomplished, does not lose his residence. (See Crawford v. Wilson, 4th Barbour, 504 ; Low v. Niven,.Judge Folger’s Report, Senate Document No. 1, vol. 1st, 1865, page 52, and cases there cited.) This vote should not be deducted from the sitting member.
It is also claimed by the contestant that the vote cast by Thomas Phillips, in the first district of the third ward, for the sitting member, should be deducted. This voter is a single man who formerly lived in this district, enlisted into the army, and upon his return took úp his residence in the town of Elma, where he now resides. (See evidence, pages-122, 123 and 124; see evidence, pages 65, 66-68, 69.) This voter stated to several persons that he resided in the *373 town of Elma, and at th.e time lie cast his ballot he was a resident of the town of Elma, and his vote should be deducted from those allowed for the sitting member. (See evidence and cases above cited.)
In the first election district of the second ward, by the returns, it. appears there were two hundred and forty ballots cast for William Williams, and eighty-five ballots cast for James S. Lyon. It is an undisputed fact that the returns as made upon the night of the election, the ballots cast for William Williams were two hundred and forty-seven; for James S. Lyon, ninety-one, and that seven votes were deducted from those of the sitting member and six from the contestant by the mere direction of the inspectors or clerics. (See evidence, pages 2, 3-7-82.)
It appears, that in the morning they for the first time discovered that there was an excess of twelve votes, and that a man by the name' of Ryan, who was not registered, voted, but for which candidate does not appear, and they therefore .decided to deduct thirteen votes as above stated.
In this district Mr. Kelly found four double ballots, all for the sitting member, and he destroyed one single ballot, leaving seven single ballots, which were placed under a lamp. (See evidence of Kelly, page six.) Mr. Wells found one double ballot-and one triple, all for William Williams, making five votes in all, which were also placed under the lamp. (See evidence, pages 28, 29.) In this district there was considerable confusion and much irregularity during the day, and in canvassing the votes the statute was not complied with in all respects. After closing the polls, the first duty of the inspector was to ascertain the number of persons voting and the number of votes cast, to see how they compared. It appears that the clerk had kept the number of each voter marked opposite his name on the poll lists, and had checked a mark under the head of each ticket;' that there were eight hundred and thirty-eight votes east in this district in all, and that there are twelve voters whose names are not checked as voting for-member of Assembly. (See evidence, pages 98, 99, 100.)
It is claimed by the contestant that these double ballots should have been destroyed, and that they were improperly counted for the sitting member.
The rule of law is that whenever any double ballots shall be found they shall be laid aside, and if, by allowing them when counted singly, *374 it produces an excess of votes, they shall both be destroyed ; for the fraud attempted to be perpetrated, the law punishes the voter by destroying the legal as well as the illegal vote. (See Laws of 1842, chap. 130, § 37.)
Six men in this case attempted to vote more than one ballot, and it producing an excess, the whole six must^ be disfranchised, as there was an excess of ballots even after destroying these votes. It appears from the poll lists that three hundred and twenty-five men voted for member of Assembly; it is also proved that two voters named O’hTeil and Leary voted for the sitting member for member of Assembly, whose names are not so cheeked on the poll lists, which would increase the number of votes cast in this district to . three hundred and twenty-seven. (See evidence, pages 115, 116, Í17, 119 and 120.)
From the poll lists of this district introduced in evidence before the committee it .appears that these men are not checked as voting for member of Assembly.
Were these six double ballots counted for the sitting member ? After a careful review of all the evidence, it is the conclusion of the undersigned that they were. Kelly swears that they were placed under the lamp, and afterwards taken out and counted by George A. Moore. (See.evidence, pages 7, 18 and 37.)
The evidence of Joseph McAbe, one of the inspectors, is very unsatisfactory upon this point; hut a fair construction of his testimony leads to the conclusion'that these ballots were counted. (See evidence of Joseph McAbe.)
If there had been three hundred and thirty-eight votes cast for member of Assembly, these six double ballots when opened and counted would have made three hundred and thirty-four ballots, but there were only three hundred and thirty-eight ballots in all; if three hundred and twenty-seven, the number proved, had only voted for member of Assembly, there should have been only three hundred and thirty-three ballots in all; but there were three hundred and thirty-eight, an excess of five-. There is evidently a mistake somewhere, whicli will be considered hereafter in its bearing upon another question.
In the judgment of the undersigned, James S. Lyon should be allowed ninety-one ballots, the number proved to have been cast for him before any deduction was made, and William Williams should be restored to the number first found for him, two hundred and *375 forty-seven, from which deduct the six double ballots or twelve ballots (one having been destroyed by Kelly), which leaves him in this district two hundred and thirty-five votes. ¥e only deduct twelve votes, as the inspector erroneously rejected Ryan’s vote, which cannot be done, as it is not proved how he voted. By this process it will he seen that it shows an excess of five votes, if we find that three hundred and twenty-seven was the whole number of votes cast for member of Assembly, as after disfranchising six votes, which we have done, it should only leave three hundred and twenty-one as the whole number of votes.
If it were true that there was an excess of five votes, the inspectors should have t placed 'the whole number of ballots back in the box and drawn out the excess, which was not done in this case. If we accept it as a fact that there was an excess of five ballots, would we be justified in vitiating the election for this failure on the part'bf the inspectors to perform their duty in drawing out the excess ? We hold not. An election should not be set aside and a large number of voters disfranchised for every irregularity or failure to comply with a statute regulation. Those provisions of the election law which are directory apply t.o the inspector, and not to the tribunal reviewing this action. (See Low v. Niven, above cited, page 34.) There is no rule by which this committee can deduct or draw the excess of votes. We cannot tell which party would have lost or gained if the law had been followed; and we do not believe we should be justified by any law or principle in setting aside the. election for this irregularity. And it is not clear that there was this excess. Conceding that there were six double ballots, which when counted made twelve ballots, and all counted together making three hundred and thirty-eight votes cast, there must have been three hundred and thirty-two ballots cast, six of which were double ballots, and when opened counted twelve, and would make just the number three hundred and thirty-eight, these twelve ballots, by the statute, must be destroyed, which would be equivalent to deducting six ballots from three hundred and thirty-two, leaving two hundred and twenty-six ballots in all to be allowed; that is, six of these voters must be disfranchised, destroying the six illegal and the six legal votes found with them. It will be seen that by adding together ninety-one votes allowed for Lyons, and two hundred and thirty-five we allow for "Williams, makes three hundred and twenty-six votes in all, just the number there should be if this theory is correct. It is proved that the inspectors and clerks cop- *376 ducted the election loosely, and that there were irregularities and mistakes, and two voters were found who voted and yet were not checked. "With this state of facts proved to exist, we do not believe it would be a very violent presumption to presume that others voted who were not checked, up to the requisite number. In both views of this matter, and with all the evidence before us, we cannot decide to set this election aside for this irregularity.
There are other irregularities complained of by the contestants which we do not believe are sustained by the evidence; and, if they were, are of such a character and kind as cannot change the result. The opening or closing of the poll at the proper time is not such an irregularity as would vitiate this election. And the balance of the proof is, that they were opened and closed at the proper time.
As to the allegations of destroying ballots and putting ballots in the ballot-box by inspector Joseph McAbe, we must hold that the allegation is not sustained by tlie evidence. Each of the inspectors, McAbe and Kelly, were indiscreet, and at times were excited; but all the evidence considered together shows that no such irregularity complained of took place. (See evidence of Kelly and McAbe.)
It must be remembered that the contestant holds the affirmative of this view, and must furnish the balance of proof.
It is claimed by the contestant that, in the third election district of the first ward, the votes of Frederick J. Frost and Patrick McAbe, legal voters, were improperly rejected, and that said ballots were for him. As to Mr. Frost it would seem from his evidence that he went to vote, but, not having a full set of ballots, retired to complete his set, and, that when he came back to vote, was told that he had voted ; and they refused to receive his votes. (See evidence, page 45.) "Witness Woodward (see evidence, page 56), testifies to the same fact, and that he informed the inspector that his ballots had not been received. It appears that this voter was checked as voting. (See evidences, pages 61 and 112.) O’Donnell, the inspector in this district, contradicts the evidence of Mr. Frost, and testifies that his ballots were received. (See evidence, pages 107 and 108.) We believe, from all the evidence, that the inspector is mistaken, and that this man was not allowed to vote. He was a legal voter, and his ballots should have been received. We cannot allow this ballot for the contestant. The voter might have changed his mind, and had the right to change his mind before casting his ballot. It is only in cases when sufficient legal votes have been rejected through fraud, *377 force or mistake, as would have clearly changed the result, that we should be justified in declaring that the sitting member was not entitled to his seat, and remitting the election to the people. We cannot count the ballot for the party for whom it might have been cast, but only in cases where, if it had been received, it would have changed the result can we send the election bach to the pedple. (See Low v. Niven, supra, pages 37 and 38.)
Taking the evidences of Patrick McAbe, Inspector O’Donnell, and others present, we do not see how it can be claimed that his vote should be counted. It appears to us, conclusively, that he went in the morning to vote and was challenged; that he then left the poll, refusing or neglecting to take the requisite oath; that he went to the poll the second rime and inquired if the inspector deposited his ballot, and when informed that he did not, went again the third time and offered to vote, and again refused to take the necessary oath; the last time McAbe was intoxicated. This voter failed to comply with the provisions of the law, and his whole conduct was such that the inspector was justified in rejecting his ballot. (See evidence, pages 49-108, 112, 113.)
From the above conclusions of the undersigned, we do find that "William Williams was elected as member of Assembly from the first Assembly district of the county of Erie, by two majority over the contestant, James S. Lyons.
We have made a schedule-of,the votes, hereto attached, marked A. It appears that the sitting member has a clear majority, and we are therefore of the opinion that he is intitled to retain his seat in this body; and we would therefore recommend the adoption of the following resolution:
Resolved, That William Williams was duly elected member of Assembly for the first Assembly district of the county of Erie, at the general election held in November, 1865, by a majority of all the votes cast for member of Assembly in that district at said election, .and that he is entitled to retain the seat in the Assembly now occupied' by him.
ADOLE LEYINGEB.
EDMUND L. PITTS.
AlbaNy, Ma/i'ch 6, 1866.
*378 Schedule A.
"Whole number of votes for Williams. 3 >142
Add seven ballots arbitrarily deducted in the second district, first ward.:. 7
Add one vote found in ward box in first district, fourth ward, not allowed by inspectors.:. 1
3,150
Deduct twelve ballots, being double, found in second district, first ward. 12
Deduct one vote, Thos. Phillips, non-resident. 1
- 13
Leaving whole number of.votes cast. 3,137
Whole number of votes for Lyons.•. 3,132
Add six votes erroneously deducted by inspectors, second district, first ward.•.. 6
3,138
Deduct three votes, not registered, of Miller, Morris and Deeves. 3
- 3,135
Leaving majority for William Williams. 2
(For proceedings, testimony, petitions and notice of contestant, reply of sitting member, see Assembly Documents, 1866, vol. 2, Mo. 31.)
Assembly Documents, 1866, vol. 6, Mo. 128, which report was laid on the table and ordered printed.
HePORT OE MINORITY OE COMMITTEE.
Mr. Veeder, from a minority of the committee on privileges and elections, reported in writing, dissenting from some of the positions taken by the committee, but uniting in the concluding resolution, as follows :
Deport oe Messrs. Yeeder and Post from the Committee on Privileges and Elections, relative to the Seat now occupied by William Williams, oe Erie.
The undersigned, members of the committee on privileges and elections, to whom was referred the memorial of James S. Lyon, claiming the seat of Hon. William Williams to this House, as a mem *379 ber of Assembly from the first Assembly district of the county of Erie, respectfully report.
That while they cannot agree with some of the conclusions found by other members of said committee, and particularly as to the constitutionality of the law of last winter, known as the registry law, yet they are of the opinion, from the facts as proven' by the respective parties, that the Hon. William Williams received the greater number of votes cast for member of Assembly, for the first Assembly district of the county of Erie, at the last general election, and was therefore duly elected to said office, and therefore we recommend the adoption of the following resolution:
Hesóhed, That William Williams was duly elected a member of Assembly from the first Assembly district of the county of Erie, at the last general election, by a majority of all the votes cast for member of Assembly in said district, at said general election, and that he is therefore entitled to retain the seat in the Assembly now held by him.
WM. D. YEEDER.
LEWIS POST.
AlbaNY, March 6, 1866.
Assembly Documents, 1866, vol. 6, No. 127.
REPORTS MADE SPECIAL ORDER.
Mr. Pitts moved that said reports and resolutions be made the special order for Wednesday, March 4, at half-past seven o’clock, and that a session be held at that time for that purpose.
Mr. Speaker put the question whether the House would agree to said motion, and it wa8 determined in the affirmative, two-thirds of all the members present, voting in favor thereof.
Assembly Journal, 1866, vol. 1, pages 610, 611.
Special Order RecoNsidered.
Assembly Chamber, March 8th, 1866.
Mr. Pitts moved to reconsider the vote making the reports and resolution of the committee on privileges and elections, in the matter of James S. Lyon against Hon. William Williams for the seat now occupied by the said Williams, the special order for Wednesday evening, March 14.
Mr. Speaker put the question whether the House would agree to said motion, and it was determined in the affirmative, two-thirds of all the members present voting in favor thereof.
*380 "William Williams awarded the Seat. — Reports Adopted.
Mr. Pitts moved the adoption of said reports and resolution offered by him, awarding the seat 'to the present occupant, William Williams.
Mr: Speaker put the question whether the House would agree to said motion, and it was determined in the affirmative.
Assembly Journal, 1866, vol. 1, page 651.